IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHERRY L. MILLER, : | |
| : | |
| Plaintiff, : | |
| : | Civil No. 19-11397 (RBK/MJS) |
| v. : | |
| CAMPBELL SOUP COMPANY – : | **OPINION** |
| RETIREMENT & PENSION PLAN : | |
| ADMINISTRATIVE : | |
| COMMITTEE, : | |
| : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This matter involves a dispute about a former employee's pension eligibility calculation. Presently before the Court is Defendant's Motion to Dismiss the Complaint (Doc. No. 35). For the reasons set forth below, Defendants' Motion to Dismiss is **DENIED**.

Defendant also moves to strike Plaintiff's sur-reply brief, which was filed without leave of the Court. (Doc. No. 39). A motion to strike is a procedural mechanism to remove inappropriate, insufficient, or redundant matters from pleadings. *See* Fed. R. Civ. P. 12(f). The sur-reply brief (Doc. No. 38) is not a pleading, so a motion to strike it pursuant to Rule 12(f) is not a proper mechanism. For this technical reason, we deny Defendant's Motion to Strike (Doc. No. 39). We note, however, that sur-replies may be filed only with leave of this Court. Local Civ. R. 7.1(d)(6). Plaintiff did not seek leave to file a sur-reply, so we will not consider it.

**I.  BACKGROUND**

The following background is taken from the Amended Complaint (Doc. No. 31-1) and presumed true for the purpose of the pending Motion. On August 9, 2017, Campbell Soup

1

Company mailed a Retirement and Pension Plan Benefit Notice and Election Package to Plaintiff. The mailing contained a commencement effective date of November 1, 2017. On or about October 3, 2017, Plaintiff noticed that the Years of Benefit Service was 15.3333 in the Pension Election Package. Plaintiff contends that this number is not accurate. Defendant administers the Pension Plan ("Plan").

Plaintiff was hired by Campbell Soup Company at their Camden, New Jersey headquarters on November 1, 1985 as a full-time, salaried employee, and she was eligible for pension benefits beginning that date. She worked as a full-time, salaried, pension-eligible employee until February 16, 2001. She was then rehired on June 25, 2001 and worked as a full-time, salaried employee until October 31, 2015.

On February 6, 2003, Plaintiff received a letter from Campbell Soup Company Employee Relations confirming the Bridging Policy and stating that the count of years of benefit service as of January 1, 2003 was 16 years and 10 months, or 16.8333 years.

On February 28, 2008, a 2008 Pension Estimate Calculation Statement, which was managed by the Plan's recordkeeper, reported years of service of 22.50.

Plaintiff contends that as of the October 13, 2015 termination, her Plan years of service count is 28.182, not 15.3333. Plaintiff communicated this discrepancy to Defendant some time in 2017. On December 13, 2017, Plaintiff received a Claims Review / Denial of Benefits letter.

Plaintiff brings a claim against Defendant for breach of fiduciary duty and equitable estoppel under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff asks this Court to make Defendant make her pension-eligible years of service count 28.182 dating back to November 1, 2017 and to provide any other applicable relief.

Plaintiff initially filed a Complaint on April 26, 2019. (Doc. No. 1). We dismissed that Complaint without prejudice in a February 10, 2020 order. (Doc. No. 14). After a series of attempted amended complaints, we granted leave to file the present Amended Complaint. (Doc. No. 33). Defendant now moves to dismiss the Amended Complaint. (Doc. No. 35).

**II.     STANDARD OF REVIEW**

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).

Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

We note our "well-established" obligation to construe *pro se* pleadings liberally, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), pursuant to a "tradition of leniency." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

### III. DISCUSSION

#### A. The Plan and the Bridging Policy

Defendant has supplied the Plan (Doc. No. 9-3 ("Plan")), a document "whose contents are alleged in the complaint and whose authenticity no party questions," so we may consider the Plan in addition to the Complaint when deciding the motion to dismiss. *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014).

Prior to April 30, 1999, the Plan calculated a participant's retirement benefit using the traditional, old formula. (Plan at 27-39). On May 1, 1999, the Plan converted from a traditional pension plan using the old formula to a cash balance plan, under which participants accrue retirement benefits based on a combination of "Pay Credits" and "Interest Credits." (*Id*. at 1, 18). Thereafter, employees hired or rehired by Campbell accrued retirement benefits under that Cash Balance formula. For Campbell employees who participated in the Plan prior to May 1, 1999, benefits were calculated under both formulas. Under the old formula, participants continued to accrue their retirement benefits for an additional fifteen years or until the "first termination of

4

[their employment] after April 30, 1999," whichever occurred earlier, at which point no further benefits accrued under the old formula. (*Id*. at 27). The Plan simultaneously calculated a benefit using the Cash Balance formula. (*Id*. at 18). Upon retirement, these participants would receive the greater of the two formulas. (*Id*. at 23).

> Specifically, the Plan's Article V, which sets out the old formula, states:
>
> A Participant's benefit calculated under Sections 5.01 through 5.05 shall be subject to the following limitations:
> (a) A Covered Employee who becomes a Participant on or after May 1, 1999, shall not accrue benefits under this Article V.
> (b) An individual who is a Participant but not an Employee on April 30, 1999, shall not accrue benefits under this Article V after April 30, 1999.
> (c) A Participant who is a Covered Employee on April 30, 1999 shall not accrue any additional benefits under this Article V following the earliest of (i) his first termination of Covered Employment after April 30, 1999, (ii) April 30, 2014, or (iii) such date as specified in an applicable Plan amendment.

(Plan at 27).

There is no dispute that Plaintiff's first termination from Campbell was after April 30, 1999; the parties agree that February 16, 2001 is the operative date for Plaintiff's first termination. Under Article V, item (c)(i) of the Plan (Plan at 27), Plaintiff does not accrue any additional benefits under the old formula following her first termination after April 30, 1999. She had accumulated retirement benefits under the old formula between her hiring on November 1, 1985, and February 16, 2001, which is 15.333 years.

Plaintiff's second period of employment was from June 25, 2001, to October 31, 2015. The Bridging Policy states in relevant part:

> **Purpose:** The purpose of this policy is to consistently apply the same rules for bridging of prior service, for all affected Programs: Pension, 401K, ESP Retiree Medical, Vacation, Personal Time, Severance, and Salary Sick Pay. To Achieve this consistency the ERISA rules, which prescribe bridging of prior service for pension plans, will be the foundation of this policy.
> **Effective:** January 1, 2003
> **Eligibility:** US Regular full time and regular part time benefited salaried employees

5

1. Employee must have worked at least 3 months before leaving the Company during the prior employment period.
2. Employee must work at least 6 months following rehire to be eligible to receive credit for prior service.
   **Benefit:**
1.  If prior service is equal to or greater than 5 years, employee receives credit for prior service.

(Doc. No. 31-1 Exhibit B).

Under the Bridging Policy for prior service greater than five years, Plaintiff received credit for her prior service. This means that her retirement benefit continued to accrue under the operative formula, the Cash Balance formula. This does not mean that her credit for retirement reverted the calculation back to the old formula. This is because the Plan precludes further accruals under the old formula following Plaintiff's "first termination" of employment after April 30, 1999. (Plan at 27). Nothing in the Bridging Policy amended or modified the Plan.

Plaintiff points out that the Bridging Policy explicitly defines its purpose of consistently applying the same rules for bridging for prior service, including for pensions. Plaintiff reads the Bridging Policy to carry over the old formula for pension service calculations notwithstanding the Plan. But as discussed, the Plan sets out a specific limitation on accrual under the old formula after Plaintiff was terminated in 2001. What the Bridging Policy does do is make Plaintiff's retirement benefit under the new formula accrue after rehire, taking into account her previously accumulated Pay Credits and Interest Credits.

B. Breach of fiduciary duty for misrepresentation

Campbell made incorrect pension eligibility statements to Plaintiff twice. On February 6, 2003, a Manager at Campbell Employee Relations sent Plaintiff a letter stating "We are very pleased to inform you that as a result of our new Service Bridging Policy, it has been determined that you have 16 years, 10 months of benefited service with Campbell Soup Company. Effective

January 1, 2003, you will be entitled to all the Company Benefits that apply to an employee with this length of service. Your Human Resources Record reflects a service date of 3/1/86." (Doc. No. 31-1 Exhibit B at 16). On February 28, 2008, Campbell submitted to Plaintiff a pension estimate of "Benefit Service" of 22.5 years in response to Plaintiff's request. (Doc. No. 31-1 Exhibit C).

Plaintiff argues that these statements give rise to a breach of fiduciary duty under ERISA. Defendant responds that the 2003 letter was a misstatement by the Plan's recordkeeper, and that the elements of breach of fiduciary duty for misrepresentation cannot be met.

ERISA § 404 provides:

> "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;"

29 U.S.C. § 1104(a)(1).

"An ERISA fiduciary may not, in the performance of its duties, materially mislead those to whom the duties of loyalty and prudence are owed." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (cleaned up). To establish a breach of fiduciary duty claim for misrepresentation, "a plaintiff must demonstrate that (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *Id.* at 228 (cleaned up).

  (1) Whether Defendant was acting in a fiduciary capacity

Defendant contends that the calculation of pension benefits is a purely ministerial task, not a fiduciary act. Section 3(21)(A) of ERISA states a person is a fiduciary with respect to a plan only:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Varity Corp. v. Howe,* 516 U.S. 489, 527 (1996) ("[A] person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan.") (internal quotation marks omitted). In contrast, "a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75-8. Ministerial functions include calculation of benefits. *Id.*

Defendant's argument is that because the calculation of benefits is ministerial, it is not possible to bring a claim relating to an incorrect or misleading calculation of benefits. But this lawsuit is not against a "person who performs purely ministerial functions." It is against the administrative committee of the Plan. The Plan states, "The members of the Committee shall be deemed to be the 'named administrators and fiduciaries' of this Plan for purposes of compliance with the fiduciary responsibility provisions of ERISA." (Plan at 116). Here, Defendant is a fiduciary, and blaming their recordkeeper for incorrect plan estimates does not change that fiduciary status. "A plan administrator ... acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees." *In re Unisys Corp. Retiree Med. Benefits*

8

*ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (citing *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 492 (3d Cir. 2000)). In *Unisys*, the human resources staff who disseminated information about medical benefits for retirees were considered agents of Unisys with "apparent, if not actual, authority" to make those communications. *Id.* at 230. Likewise, in *Pell v. E.I. DuPont De Nemours & Co.*, a Director of Employee Compensation and Benefits had apparent authority to communicate an employee's status for a benefit plan by letter. 539 F.3d 292, 301 (3d Cir. 2008). Apparent authority "(1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Id.* (citing *Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982, 989 (3d Cir. 1995)). Here, it is plausible that the Plan's Recordkeeper is an agent of Defendant with authority to communicate estimates of pension benefits. The pension benefits calculator was a manifestation by Defendant that the Recordkeeper was their agent. The Recordkeeper works for the Plan to disseminate information about Plan benefits, leading a reasonable person to believe that she has authority from Defendant to do so.

Defendant's reliance on *Galman v. Sysco Food Servs. of Metro N.Y., LLC* is misplaced. No. 13-7800, 2015 U.S. Dist. LEXIS 45746 (D.N.J. Apr. 8, 2015). In *Galman*, an employee of Sysco Food Services requested information from a human resources manager about a lump sum retirement payment. *Id.* at *2. His request was not fulfilled, and he later brought an action for *inter alia* breach of fiduciary duty against his employer. *Id.* at *1-3. The employee failed to state a claim for breach of fiduciary duty in part because he did not allege that any of the Defendants were fiduciaries with discretion to administer the plan or distribute benefits. *Id.* at *15. While the human resources manager for an employer is not a fiduciary under ERISA with respect to the Plan, a plan administrator is. *See id.* ("[the plaintiff] has failed to sue the plan administrator. A plan

administrator would generally be considered a fiduciary."). Here, Plaintiff has done what the employee in *Galman* did not, which is bring an action against the administrative committee for the Plan.

Defendant also cites *Mehra v. Pfizer Ret. Comm.* for its statement that "allegations and facts showing merely ministerial tasks" are "insufficient to establish fiduciary status." No. 11-3854, 2013 U.S. Dist. LEXIS 132582, at *26-27 (D.N.J. Sep. 17, 2013). These quotes are better understood in context:

> ERISA specifically sets forth the criteria for an entity to be deemed a fiduciary. The lynchpin of fiduciary status is discretion, and discretion is a fact specific inquiry. In that regard, Plaintiff must sufficiently allege, and the undisputed facts must demonstrate, the degree of Pfizer's discretion in managing the Pension Plan and determining Plaintiff's eligibility for benefits — i.e., whether Pfizer "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." If such is the case, Pfizer may be considered a fiduciary, and therefore, an appropriate defendant under ERISA. On the other hand, allegations and facts showing merely ministerial tasks, such as providing general information about the Pension Plan, without any showing that Pfizer had discretion on how to administer the plan, would be insufficient to establish fiduciary status.

*Mehra v. Pfizer Ret. Comm.*, No. 11-3854, 2013 U.S. Dist. LEXIS 132582, at *25-27 (D.N.J. Sep. 17, 2013) (citations omitted). In that action, Pfizer – unlike the Pfizer Retirement Committee -- was not a fiduciary with respect to the plan. *Id.* at *30. In our case, Plaintiff brings this action against the administrative committee for the Plan, not against the former employer, so *Mehra* is not applicable.

> (2) Whether Defendant made affirmative misrepresentations to plan participants and beneficiaries

Plaintiff alleges two misrepresentations by Defendant, by or through an agent, where Defendant indicated that Plaintiff had accumulated more pension eligible years than Defendant

10

ended up paying. Defendant does not contest this element. We are satisfied that Defendant's communications about pension eligible years, which Defendant later walked back, were misrepresentations.

(3) Whether the misrepresentations were material

Plaintiff alleges that difference between the misrepresented and actual pension eligibility calculation corresponds to a 46% reduction monthly pension benefit. "A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Pell*, 539 F.3d at 300 (3d Cir. 2008) (citations omitted). Defendant does not contest this element. We are satisfied that the misrepresentation here, corresponding to a 46% benefits reduction as alleged, is material.

(4) Whether Plaintiff detrimentally relied on the misrepresentations

Plaintiff alleges that she detrimentally relied on the pension benefits estimates. Specifically, Plaintiff states that the pension benefits estimates "led the Plaintiff to believe she could financially manage excessive medical expenses associated with an incurable neurological disorder." (Compl. ¶ 18(a)). Defendant contests the sufficiency of this pleading. Bearing in mind the liberal standard applied to *pro se* pleadings, we disagree with Defendant's view that Plaintiff's argument is "conclusory." We understand her pleading to indicate that she made financial decisions related to planning for large, anticipated medical expenses based on the pension benefits estimates, to her detriment. Detrimental reliance "may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." *Shook v. Avaya Inc.*, 625 F.3d 69, 74 (3d Cir. 2010) (citations omitted). Determining how to pay for upcoming medical expenses is

11

an important financial decision that was affected by the misrepresentations, so this element is sufficiently pleaded.

C. Equitable estoppel under ERISA

Defendant argues that Plaintiff is not entitled to relief under ERISA based on an equitable estoppel theory, which requires (1) a material representation by a fiduciary, (2) reasonable and detrimental reliance by Plaintiff upon the representation, and (3) extraordinary circumstances. *Pell*, 529 F.3d at 300 (citing *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994). As discussed above, the first two elements have been pleaded.

Extraordinary circumstances arise in many ways, and they do not necessarily require a showing of bad faith by the employer or Plan administrator. *Kurz v. Phila. Elec Co. (Kurz II)*, 96 F.3d 1544, 1553 (3d Cir. 1996) (collecting cases). In *Pell*, for example, "Repeated misrepresentations over an extended course of dealings between an employer and an employee are sufficient to demonstrate the existence of extraordinary circumstances, when… the employee has been diligent in inquiring into the employer's representations, in seeking clarifications about those representations, and in obtaining reaffirmations of those representations." 539 F.3d at 304. *See also Smith v. Hartford Ins. Group*, 6 F.3d 131, 142 (3d Cir. 1993) (suggesting there are extraordinary circumstances where plaintiff repeatedly inquired about benefits and defendant repeatedly misrepresented the scope of coverage).

Here, this is not a case of a simple ERISA reporting error or an omission in the disclosure documents. *See Kurz II*, 96 F.3d at 1553. The Plan bookkeeper made affirmative misrepresentations to Plaintiff over an extended period of time: in 2003 and in 2008. The estimates were consistent with each other and consistent with the old formula. Plaintiff understood based on these estimates, five years apart, that she was continually accruing pension-eligible years under

12

the old formula. Plaintiff diligently pursued accurate pension information by making a pension estimate request. (Doc. No. 31-1 Exh. C). The misrepresentation, in effect, was sustained over the second half of her career. Given this substantial length of time that was affected and Plaintiff's diligence, Plaintiff has sufficiently pleaded extraordinary circumstances.

    D.  Statute of limitations

Defendant argues that ERISA's statute of limitations bars Plaintiff's claim. The applicable statute of limitations period is "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). While Plaintiff alleges that she first learned of the misrepresentation on December 13, 2017, Defendant points out that the Plan Bookkeeper communicated the pension calculator error to Plaintiff in 2013. Defendant has supplied a document to this effect. (Doc. No. 9-6 ("This was an error in our pension calculator, which was corrected during the month of April.")).

At the motion to dismiss stage, we limit our review to the face of the complaint, exhibits attached to the complaint, matters of public record, and documents "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). A complaint need not anticipate or overcome affirmative defenses such as a statute of limitations defense. *Id.* at 248 (citing Fed. R. Civ. P. 8). The 2013 communication Defendant cites for this argument is not part of Plaintiff's Complaint. The Complaint alleges that Plaintiff learned of the misrepresentation on December 13, 2017, not in 2013. Based only on the documents properly considered at this stage (the Complaint and the Plan), we cannot dismiss on statute of limitations grounds. *See id.* at 252. Defendant's reliance on a 2013 communication introduces a factual and evidentiary dispute as to whether the communication triggers a statute of limitations bar. We do not resolve such disputes on a motion to dismiss.

13

E.  Plaintiff's claim for additional benefits

Finally, Defendant argues that Plaintiff is not entitled to additional benefits because ERISA Section 502(a)(1)(B) provides relief only when a defendant denies a benefit actually provided by the applicable benefit plan. We agree with Defendant that the Plan as written does not provide benefits under the old formula after her first termination after April 30, 1999, i.e., after February 16, 2001. This does not perturb her claims for breach of fiduciary duty and equitable estoppel.

IV.  **CONCLUSION**

At the pleading stage, Plaintiff has stated a claim for breach of fiduciary duty for misrepresentation and for equitable estoppel under ERISA. Defendant's Motion to Dismiss (Doc. No. 35) is **DENIED**. Defendant's Motion to Strike (Doc. No. 39) is **DENIED**. An order follows.


Dated: 4/11/2022                                           /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge