IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHERRY L. MILLER, | : |
| | : |
| Plaintiff, | : Case No. 1:19-cv-11397 (RBK/EAP) |
| | : |
| v. | : **OPINION** |
| | : |
| CAMPBELL SOUP COMPANY – | : |
| RETIREMENT & PENSION PLAN | : |
| ADMINISTRATIVE COMMITTEE, | : |
| | : |
| Defendant. | : |
| | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion for summary judgment filed by

Defendant Campbell Soup Company Retirement & Pension Plan Administrative Committee

("Defendant" or "the Committee") and Plaintiff Sherry L. Miller's cross-motion for summary

judgment. For the reasons expressed below, Defendant's motion will be **GRANTED** and

Plaintiff's motion will be **DENIED** as moot.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Sherry L. Miller first began working for Campbell Soup Company on November

1, 1985. (ECF No. 86 ¶ 8). At that time, Campbell's Retirement & Pension Plan (the "Plan") paid

participants a monthly benefit calculated using a traditional pension formula based on a

participant's credited years of service. On May 1, 1999, the Plan converted from a traditional

pension plan using the traditional pension formula to a cash balance plan, under which participants

accrue retirement benefits based on a combination of "Pay Credits" and "Interest Credits." (*Id.* ¶

3). For Campbell employees, like Plaintiff, who participated in the Plan prior to May 1, 1999,

benefits were calculated under both formulas. (*Id*. ¶ 5). For those employees, benefits were calculated under the traditional formula, also referred to as the Grandfathered formula, for an additional 15 years after April 30, 1999, or until the "first termination of [their employment] after April 30, 1999," whichever occurred earlier, at which point no further benefits accrued under the old formula. (*Id*. ¶ 6). The Plan simultaneously calculated a benefit using the Cash Balance formula. Upon retirement, these participants would receive the greater of the two formulas. (*Id*. ¶ 7).

Plaintiff's initial employment with Campbell ended on August 12, 2000, constituting the "first termination" for purposes of the Plan. (*Id*. ¶ 9). At that point in time, Plaintiff's retirement benefits had been calculated under the traditional pension formula, and her retirement benefits under that formula froze at 15.333 years, which included her employment through August 12, 2000, as well as her severance period through February 16, 2001. (*Id*. ¶¶ 10–11). The parties agree that February 16, 2001, is the operative date for Plaintiff's first termination. (ECF No. 42 at 5).

In June of 2001, Campbell rehired Plaintiff. (ECF No. 86 ¶ 12). Campbell states that, at that time, it had a policy in effect to "bridge" prior service for rehired employees for purposes of calculating retirement benefits. (*Id*. ¶ 13). Plaintiff claims that the policy in question did not exist at the time because the effective date was January 1, 2003. (ECF No. 93 ("Pl. Br.") at 13). Although it is unclear whether there was a bridging policy in place in June 2001, it is undisputed that a new bridging policy became effective on January 1, 2003, which the parties refer to as the Bridging Policy. (ECF No. 85 ("Def. Br."), Ex. B ("Bridging Policy")). Under the Bridging Policy, Plaintiff's retirement benefits continued to accrue from the date of her rehire under the new cash balance formula, not under the former traditional pension formula. (*Id*. ¶¶ 13–14; *see also* ECF No. 42 at 14 ("the Plan as written does not provide benefits under the old formula after her first

termination after April 30, 1999, i.e., after February 16, 2001.")). On February 6, 2003, the Manager of Employee Relations at Campbell Soup sent Plaintiff a letter which stated that "as a result of our new Service Bridging Policy, it has been determined that you have 16 years, 10 months of benefits service with Campbell Soup Company." (Def. Br., Ex. D). The letter did not mention which formula Campbell applied to calculate Plaintiff's Plan benefits.

On February 28, 2008, Plaintiff received a "Pension Estimate Calculation Statement" from the Plan's recordkeeper. (ECF No. 86 ¶ 29; Def. Br., Ex. E). The estimate misstated Plaintiff's years of benefit service because it did not account for her February 2001 termination and June 2001 rehiring. The Plan's recordkeeper discovered this error in April 2013 and corrected it, although Plaintiff was not immediately informed of the error. (ECF No. 86 ¶ 31; ECF No. 91 ¶ 31). At some point shortly after the error was corrected, Plaintiff noticed the corresponding decrease in her estimated retirement benefits on the online pension calculator and contacted the recordkeeper to protest the amount. (ECF 86 ¶ 32). Defendant claims the recordkeeper responded to Plaintiff, explaining that the error concerned her formula eligibility: "Based on your hire date, you were originally eligible for the GF formula [i.e., the grandfathered traditional formula]. . . . After your rehire, you are only eligible to accrue under the CB [cash balance] formula." (*Id.* ¶ 33; Def. Br., Ex. F). However, Plaintiff denies receiving this communication. (ECF No. 91 ¶ 33).

In the fall of 2015, Campbell offered some of its employees, including Plaintiff, an opportunity to participate in a Voluntary Separation Incentive Program, which offered benefits to participants, including "generous" severance pay. (ECF No. 86 ¶¶ 15–16). Plaintiff elected to participate in the separation program on October 23, 2015. (Pl. Br. at 9). As part of the separation program, Plaintiff was required to enter into a Voluntary Separation Agreement (the "Agreement"), which included a General Release clause (the "Release"). Under the Release,

Plaintiff agreed to release Defendant, as a "benefit plan fiduciary," from "any and all claims, causes of action, complaints, lawsuits, or liabilities of any kind," "any Claims under the Employee Retirement Income Security Act," and "any other statutory, regulatory, common law, or other Claims of any kind," including equitable estoppel or misrepresentation clams. (ECF No. 86 ¶ 20; *see also* ECF No. 93-5, Ex. D ("Agreement") ¶ 3(b)). The Agreement also includes a clause titled "Non-Released Claims," which specifies that any "[c]laims for vested benefits under any qualified retirement or savings plan" or "[c]laims arising after [the employee has] signed [the] Agreement" are not released under the agreement. (Agreement ¶ 4).

Plaintiff had a 45-day period to consider whether to execute the Agreement. (ECF No. 86 ¶ 23). Plaintiff did not consult an attorney, although she was advised to do so. (*Id.* ¶ 21–22). Plaintiff signed the Agreement on October 23, 2015, and she testified at her deposition that she understood that, by signing the Agreement, she represented that she had read it carefully. (*Id.* ¶ 24). On October 31, 2015, her employment with Campbell Soup ended. (Pl. Br. at 9). In exchange for entering into the Release, Plaintiff received 101 weeks of severance pay, which totaled $196,000.00, plus continued medical coverage during the severance period. (ECF No. 86 ¶ 25). To date, Plaintiff has not claimed her Plan benefit, which currently exceeds $300,000.00 if taken as a lump sum. (*Id.* ¶ 34).

Plaintiff alleges that around December 2017, she became aware that her years of benefit service under the Plan had been calculated as 15.333 years, contrary to the statements from Campbell Soup and its employees. (ECF No. 31 ("Compl.") ¶ 15). On March 12, 2021, Plaintiff filed the operative Amended Complaint, in which Plaintiff alleged that, under the Bridging Policy, she was entitled to 28.182 years of benefit service under the traditional pension formula. (Compl. ¶ 16). Now that the parties have completed discovery, Plaintiff claims that she is entitled to 28.6

4

years of benefit service pursuant to the traditional pension formula. (Pl. Br. at 8). Plaintiff asserted three causes of action in the Amended Complaint. First, she alleged that the Bridging Policy entitles her to additional benefits, and she sought to recover those benefits pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). On April 12, 2022, we dismissed that claim because we found Plaintiff is not entitled to further benefits under the express terms of the Plan. (ECF No. 42 at 14). The Complaint also asserted claims for (1) breach of fiduciary duty for misrepresentation and (2) equitable estoppel, both of which are brought pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Those two claims survived Defendant's motion to dismiss. (*Id.*). Defendant filed a motion for summary judgment on February 6, 2023. Plaintiff opposed and filed a cross-motion for summary judgment on March 6, 2023.

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law.*" Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). A party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point

to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), while credibility determinations are left to the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

Defendant argues it is entitled to summary judgment on two independent bases. First, Plaintiff's claims are barred because the Agreement explicitly releases Plaintiff's claims in exchange for severance benefits. Second, Defendant argues that even if Plaintiff did not release her claims, she did not in fact detrimentally rely on the misrepresentations. In response, Plaintiff argues that her claims are not barred because they fall under the Release's carveout for non-released claims. Alternatively, she argues the claims are not released due to ambiguity in the language of the Release. She further argues that she has presented sufficient evidence to find that she detrimentally relied on Defendant's misrepresentations. Because we agree with Defendants that the Release bars Plaintiff's claims, we will grant Defendant's motion for summary judgment.

The Release provides:

By agreeing to this General Release, you are waiving, to the maximum extent permitted by law, any and all Claims that you have or may have against the

> Company or any of the other Releasees arising out of or relating to your
> employment and/or termination, including, but not limited to . . . any Claims under
> the Employee Retirement Income Security Act . . . and/or . . . any other statutory,
> regulatory, common law, or other Claims of any kind, including, but not limited to,
> Claims for . . . fraud, promissory estoppel, equitable estoppel, . . . [and]
> misrepresentation . . . .

(Agreement ¶ 3(b)). "Releasees" is defined to include "the Company and any parent, subsidiary, related, or affiliated entities of the Company, and each of their past and present employees, officers, directors, attorneys, shareholders, partners, insurers, benefit plan fiduciaries and agents, and all of their respective successors and assigns." (*Id.* ¶ 3(c)). Plaintiff does not dispute that Defendant is a Releasee because the Committee is a "benefit plan fiduciary." (*See* Def. Br. at 9; ECF No. 91 ¶ 19). Defendant argues Plaintiff's claims are barred under the plain language of the Release. (Def. Br. at 10). Plaintiff concedes that she signed and executed the Release. (ECF No. 91 ¶ 18). However, she asserts the Release is unenforceable as to the claims in her Complaint because she "did not waive rights under" ERISA and she argues that "[t]he entire agreement (release) is subject to review in its entirety to determine its apparent ambiguity." (Pl. Br. 18).[1]

"We apply federal law to the interpretation of contracts affecting ERISA benefits. . . . That law includes the general contract principle that an unambiguous agreement should be enforced according to its terms." *Calvitti v. Anthony & Sylvan Pools Corp.*, 351 F. App'x 651, 654 (3d Cir. 2009) (quotation omitted). "Whether [a contract] is unambiguous is a question of law that the Court decides by considering whether, from an objective standpoint, [the contract] is reasonably susceptible to at least two different interpretations." *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005) (quotation omitted). "In determining whether a term is

---

[1] Plaintiff also reasserts her argument that the Release is invalid because a waiver of ERISA duties is not permitted under Section 410(a) of the statute. (Pl. Br. at 19). Section 410(a) prohibits agreements that diminish the statutory obligations of a fiduciary. We rejected this argument in a previous decision and will not reconsider it here. (*See* ECF No. 80 at 9) ("[T]he release form does not diminish Defendant's statutory obligations under ERISA, and therefore is not void [under Section 410(a)].").

ambiguous, we must consider the contract language, the meanings suggested by [the parties], and the extrinsic evidence offered in support of each interpretation." *Einhorn v. Fleming Foods of Pa., Inc.*, 258 F.3d 192, 194–95 (3d Cir. 2001). "If the court determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact for the trier of fact to resolve[.]" *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). On the other hand, "where a plaintiff's claim is foreclosed by the plain language of the contract, summary judgment is appropriate." *Allegheny Design Mgmt. v. Travelers Indem. Co. of Am.*, 572 Fed. Appx. 98, 100 (3d Cir. 2014).

Plaintiff concedes that she "understood and agreed" to the contents of the Agreement at the time she signed it, and that she "intend[ed] to be legally bound." (Pl. Br. at 9). However, Plaintiff "disagrees with the Defendant's interpretation of the . . . Release" and argues that the Release "did not waive rights under ERISA associated with the Plan." (*Id.* at 9, 11). Plaintiff first argues that her claims fall under the Non-Released Claims, which are enumerated in the Agreement as follows:

> The General release in Paragraph 3 above does <u>not</u> apply to:
>
> (d) Any Claims for vested benefits under any Company qualified retirement or savings plan in which you participate . . .;
>
> (e) Any Claims to require the Company to honor its commitments set forth in this Agreement . . .;
>
> (f) Any Claims arising after you have signed this Agreement; and
>
> (g) Any Claims for workers compensation benefits, any Claims for unemployment compensation benefits, and any other Claims that cannot be waived by a General Release.

(Agreement ¶ 4). Plaintiff argues her claims fall under Paragraph 4(d), which excludes claims for vested benefits from the Release, because she is entitled to "benefits under the terms of the Plan due to the Defendant's breach of fiduciary duty." (Pl. Br. at 18). However, we have already rejected Plaintiff's claim that she is entitled to benefits under the terms of the plan. (ECF No. 42 at 14).

Therefore, Plaintiff does not have a claim for "vested benefits" that would be excluded from the terms of the Release under Paragraph 4(d).

Next, Plaintiff argues her claims fall under Section 4(f), which excludes from the Release claims arising after execution of the Agreement. Plaintiff argues her claims may proceed under this exclusion because "[t]he issue with years of benefit service for the Plaintiff surfaced on October 3, 2017," which is two years after she signed the agreement. (Pl. Br. at 18). Plaintiff claims she did not have actual knowledge of the discrepancy in service years until receiving the Benefit Denial Letter on December 13, 2017, in which the Manager of Retirements Plan explained why her claim was denied and stated that her "years of service was incorrect as it assumed [Plaintiff] had been employed continuously from [her] original hire without a service break." (ECF No. 93-3 at 21–23). However, Third Circuit case law is clear that claims based on fiduciary misrepresentation accrue "no later than the date upon which the employee relied to [her] detriment on the misrepresentations." *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 505–06 (3rd Cir. 2001). Plaintiff's claims thus accrued on October 23, 2015, when she signed the Agreement in alleged reliance on misrepresentations Campbell employees had previously made about her Plan benefits. Any misrepresentations made *after* Plaintiff signed and executed the Agreement were not relied upon in Plaintiff's decision to enter into the Agreement, and therefore cannot be used to substantiate Plaintiff's claims. *See Shook v. Avaya Inc.*, 625 F.3d 69, 73 (3d Cir. 2010) (demonstrating detrimental reliance requires proof that the plaintiff took "some action as a result of the misrepresentation").

Finally, Plaintiff argues the language of the Release is ambiguous and "subject to review." (Pl. Br. at 18). However, Plaintiff does not offer an alternative interpretation. A contract is ambiguous only if it "is reasonably susceptible to at least two different interpretations." *McDowell*,

423 F.3d at 238. The language of the Release is clear: it releases Defendant from claims "to the maximum extent of the law," and explicitly identifies ERISA, misrepresentation, and estoppel claims as among the causes of action Plaintiff released in signing the Agreement. We do not find this language is susceptible to two different interpretations.

Defendant urges us to adopt the reasoning in *Johnston v. Independence Blue Cross, LLC*, 2021 WL 765771 (E.D. Pa. Feb. 26, 2021). We agree with Defendant that *Johnston* is directly on point with this case. In *Johnston*, the plaintiff was earning retirement benefits pursuant to the defendant's final average compensation formula. 2021 WL 765771, at *1. During the plaintiff's employment, the defendant amended the pension benefits formula to a cash balance formula, and the final average compensation formula was no longer used. *Id*. The plaintiff voluntarily resigned, and entered negotiations five months later to be rehired, at which time the defendant's representatives inaccurately informed her that "her benefits would remain the same as they were during her previous period of employment." *Id*. Sixteen years later, the plaintiff entered a voluntary severance program and signed a separation agreement, which included a general release clause that released the defendant from "any and all claims of…misrepresentation, fraud, detrimental reliance, [and] breach of contractual obligations" and "any and all claims concerning or relating in any way to Employee's employment relationship or the termination of [the relationship]." *Id*. at *1–2. The defendant calculated the plaintiff's benefits using the cash balance formula for benefits accrued after her rehire date, which the plaintiff later disputed. *Id.* at *1. The plaintiff brought ERISA claims against the defendant, including a breach of fiduciary duty and misrepresentation claim. *Id*. at *3.  The *Johnston* court granted the defendant's motion for summary judgment and held that the general release unambiguously waived the plaintiff's claim. *Id*

This case has a nearly identical set of facts, and we apply the same reasoning as that of the *Johnston* court. Plaintiff's claims are premised on her detrimental reliance on Campbell's misrepresentations of her pension plan benefits. Because the terms of the Release unambiguously waive misrepresentation, estoppel, and ERISA claims, Plaintiff's claims are "foreclosed by the plain language of the contract," and Defendant is entitled to judgment as a matter of law. *Allegheny Design Mgmt*, 572 Fed. Appx. at 100.

## III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** as moot Plaintiff's motion for summary judgment. An appropriate Order follows.


Dated: 8/17/2023                                           s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United State District Judge